UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-00203-KK-MBKx** | Date: | January 29, 2026 |
|---|---|---|---|
| Title: | *Xiukun Wang v. Fereti Semaia et al.* | | |

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **(In Chambers) Order GRANTING Petitioner's Ex Parte Application for Temporary Restraining Order [Dkt. 7]**

## I.
## INTRODUCTION

On January 16, 2026, petitioner Xiukun Wang ("Petitioner"), who is currently detained in the custody of Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus ("Petition") against respondents Fereti Semaia, Ernesto Santacruz, Jr., Todd Lyons, Pamela Bondi, and Kristi Noem ("Respondents").  ECF Docket No. ("Dkt.") 1, Petition ("Pet.").  On January 24, 2026, Petitioner filed the instant Ex Parte Application for Temporary Restraining Order ("Application"), seeking a temporary restraining order ("TRO") to order her immediate release from custody and to enjoin Respondents from re-detaining her absent compliance with ICE's internal regulations and due process.  Dkt. 7, Application ("App.").

The Court finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons set forth below, Petitioner's Application is **GRANTED**.

## II.
## BACKGROUND

As alleged in the Petition and Application, Petitioner was born in China in 1956.  Pet. ¶ 18.  On January 6, 1992, Petitioner obtained citizenship from Sierra Leone.  Id.; see App. at 34-35.  In so doing, Petitioner voluntarily renounced her Chinese citizenship, as China does not recognize dual

citizenship.  Pet. ¶ 18.  Aside from a 20-day visit in June 1992, Petitioner has not traveled to or otherwise resided in Sierra Leone.  Id. ¶ 28; see App. at 25.  Petitioner lacks any ties to Sierra Leone, including family, friends, or employment.  Pet. ¶ 28; see App. at 25.

On May 20, 1997, Petitioner entered the United States on a valid visitor visa.  Pet. ¶ 19.  Sometime thereafter, Petitioner applied for asylum.  Id. ¶ 20.  On November 10, 1999, an Immigration Judge denied Petitioner's application for asylum and entered an order of removal, which became final on February 3, 2004.  Id.; see App. at 37, 39.  However, because of her previous counsel's "unethical practice and ineffective assistance," Petitioner lacked a "meaningful opportunity to present her asylum claim on its merits."  Pet. ¶ 21 & n.1.  Petitioner subsequently filed a complaint against her previous counsel, who was later disbarred following a separate complaint.  Id. ¶ 21 n.1; see also App. at 42.

On December 17, 2008, ICE detained Petitioner in immigration custody.  Pet. ¶ 21.  During her detention, ICE took her Sierra Leone passport.  Id.  While Petitioner sent a passport application to the Embassy of Sierra Leone, it appears Sierra Leone did not issue Petitioner a valid passport.  App. at 22-25.

After nine months in ICE detention, on September 30, 2009, ICE released Petitioner on an Order of Supervision ("OSUP").  Pet. ¶ 21; see App. at 45-49.  Among other requirements, the OSUP instructed Petitioner to report to ICE for periodic check-ins, beginning November 9, 2009.  See App. at 45-47.

Since her release from immigration custody, Petitioner has fully complied with her OSUP by reporting to ICE as instructed, maintaining records of her check-ins, and adhering to the terms of her release.  Pet. ¶ 22; see App. at 51-56.  During this time, Petitioner has "continued to build a life here, running her own business, working to support herself, paying taxes, regularly attending church, and living openly in the community."  Pet. ¶ 22.

On September 11, 2025, Petitioner received a written notice from ICE directing her to report for an appointment on December 16, 2025, at the Los Angeles Field Office.  Id. ¶ 23; see App. at 61.  The notice listed "Case Review" as the reason for the appointment.  App. at 61.

On December 16, 2025, Petitioner reported to the Los Angeles Field Office as directed.  Pet. ¶ 24.  Upon her arrival, ICE re-detained Petitioner and provided her with a Notice of Revocation of Release ("Notice") stating ICE was revoking Petitioner's release "based on a review of [her] official alien file and a determination that there are changed circumstances in [her] case."  Id. ¶¶ 24, 30.  Petitioner was subsequently transferred to the Adelanto ICE Processing Center, where she remains detained today.  Id. ¶ 1.

On January 2, 2026, Petitioner's counsel emailed the Adelanto ICE Processing Center and Los Angeles Field Office to inquire into the circumstances of Petitioner's re-detention.  Id. ¶ 25.  On January 5, 2026, Deportation Officer C. Jenson responded to Petitioner's counsel, indicating ICE expected to acquire travel documents for Petitioner because she "hold[s] passports from both China and Sierra Leone" and both countries "actively issuing travel documents for their nationals and citizens."  Id. ¶ 26; see id. at 16-19.

On January 16, 2026, Petitioner filed the operative Petition against Respondents, raising the following grounds for relief:

1. **Ground One:**  Unlawful Re-Detention Without a Pre-Deprivation Hearing;
2. **Ground Two:**  Violation of Regulations Governing Revocation of Release; and
3. **Ground Three:**  Violation of Due Process.

Id. ¶¶ 31-57.

On January 24, 2026, Petitioner filed the instant Application, requesting a temporary restraining order ordering her immediate release and enjoining Respondents from re-detaining her without a notice and hearing before a neutral factfinder.  App. at 1-2.  Petitioner argues her re-detention (1) ICE's regulations governing revocation of release, id. at 7-9, and (2) the Due Process Clause of the Fifth Amendment ("Due Process Clause"), id. at 9-12.

On January 28, 2026, Respondents filed an untimely Response to Petitioner's Application.[1]  Dkt. 11.  In their Response, Respondents state, "At this time, Respondents do not have an opposition argument that they are able to present."  Id. at 2.

This matter, thus, stands submitted.

## III.
## LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction.  See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001).  Under Federal Rule of Civil Procedure 65, the Court may grant a temporary restraining order to prevent "immediate and irreparable injury."  Fed. R. Civ. P. 65(b)(1).  Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("Winter factors").  See id. at 20.  Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the Winter standard."  Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified).  Under the serious questions standard, the four Winter elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another."  All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).  Thus, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," and so long as the other Winter factors are also met.  Id. at 1132.

///

---

[1] On January 26, 2026, the Court ordered Respondents to file an Opposition to Petitioner's Application by 5:00 p.m. on January 27, 2026.  Dkt. 8.

# IV.
# THE WINTER FACTORS WEIGH IN FAVOR OF GRANTING THE TEMPORARY RESTRAINING ORDER

## A.  LIKELIHOOD OF SUCCESS ON THE MERITS

The likelihood of success on the merits is the most important Winter factor, which "is especially true for constitutional claims." Junior Sports Mags. Inc. v. Bonta, 80 F.4th 1109, 1115 (9th Cir. 2023) (citing Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)).

### 1.  Applicable Law

#### a.  ICE's Regulations

8 U.S.C. § 1231(a) ("Section 1231(a)") governs the detention, release, and removal of noncitizens with an order of removal. Under Section 1231(a), a noncitizen who has been ordered removed must be detained during the 90-day removal period. 8 U.S.C. § 1231(a)(1)(A), (2)(A). However, if a noncitizen is not removed within this period, they must be released "subject to supervision under regulations prescribed by the Attorney General." Id. § 1231(a)(3). While certain noncitizens may be detained beyond the 90-day removal period, such noncitizens, if released, must be subject to the same terms of supervision as under Section 1231(a)(3). Id. § 1231(a)(6) ("Section 1231(a)(6)").

8 C.F.R. § 241.4 ("Section 241.4") and 8 C.F.R. § 241.13 ("Section 241.13") set the terms of supervised release under Sections 1231(a)(3) and 1231(a)(6), including the conditions and procedures under which ICE may revoke release.[2] 8 C.F.R. §§ 241.4(l), 241.13(i). First, ICE may revoke release when a noncitizen violates a condition of their OSUP. Id. §§ 241.4(l)(1), 241.13(i)(1). Second, ICE may revoke release when, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." Id. § 241.13(i)(2). Third, certain officials may exercise their discretion to revoke the release. Id. § 241.4(l)(2).

Upon revocation of release, ICE must provide the noncitizen a copy of the decision "set[ting] forth the reasons for the continued detention." Id. § 241.4(d). Additionally, the noncitizen must be "notified of the reasons for revocation" and afforded "an initial informal interview promptly . . . to respond to the reasons for revocation stated in the notification," id. §§ 241.13(i)(3), 241.4(l)(1).

///

---

[2] Section 241.4 establishes conditions and procedures for the continued detention of noncitizens beyond the statutory 90-day removal period under Section 1231(a)(6). See 8 C.F.R. § 241.4(a). In comparison, Section 241.13 establishes special procedures for noncitizens "who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 . . . where the [noncitizen] has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." Id. § 241.13(a).

      **a.    Due Process Clause**

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. As the Supreme Court recently reaffirmed, the Fifth Amendment "entitles [noncitizens] to due process of law in the context of removal proceedings." A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025) (citation modified) (quoting Trump v. J.G.G., 604 U.S. 670, 673 (2025)).

"Due process is flexible and calls for such procedural protections as the particular situation demands." United States v. Rivera-Valdes, 157 F.4th 978, 991 (9th Cir. 2025) (citation modified) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). In general, due process "requires some kind of a hearing before the State deprives a person of liberty or property." Shinault v. Hawks, 782 F.3d 1053, 1058 (9th Cir. 2015) (citation modified) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)). To determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," courts apply the three-part balancing test established in Mathews v. Eldridge, 424 U.S. 319 (1976). Yagman v. Garcetti, 852 F.3d 859, 864 (9th Cir. 2017) (citation modified) (quoting Shinault, 782 F.3d at 1057). Under the Mathews test, courts consider "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." Mathews, 424 U.S. at 321.

    **2.    Analysis**

Here, Petitioner claims Respondents violated the Due Process Clause. App. at 7-12. The Court finds Petitioner is likely to succeed on or has at least raised serious questions regarding the merits of her due process claim.[3]

First, Petitioner has a substantial private interest in remaining out of immigration custody. As a noncitizen residing within the United States, Petitioner is entitled to constitutional due process. Further, as noted, Petitioner was released on an OSUP in 2009 following her nine-month initial detention in immigration custody. Petitioner's release on supervision gave rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004); see also Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the

---

[3] With respect to Petitioner's other claim in her Application regarding ICE's compliance with the regulations governing revocation, Petitioner contends the revocation of her release violated the requirements of Sections 241.13 and 241.4 because there are no changed circumstances demonstrating a significant likelihood of her removal in the reasonably foreseeable future, the Notice did not explain the specific basis for the revocation of her release, and the Notice does not indicate the revocation decision was made a properly authorized official. App. at 7-9. Petitioner does not provide a copy of the Notice indicating the purported basis for the revocation of her release. Regardless, because the Court finds Petitioner is entitled to the requested relief based on her due process claim, the Court need not consider this alternative claim.

protections of the Due Process Clause."). The fact Petitioner was previously "held in custody by the government at an earlier time does not eliminate [her] liberty interest in remaining on release." Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 932 (N.D. Cal. 2025) ("Being held in custody by the government at an earlier time does not eliminate one's liberty interest in remaining on release." (citing Morrissey, 408 U.S. at 482)).

Petitioner's release on an OSUP thus contained an "implicit promise that parole will be revoked only if [s]he fails to live up to the parole conditions." Morrisey, 408 U.S. at 482; see also Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). For over fifteen years, Petitioner relied on this promise to become "gainfully employed," live "with family and friends," and "form the other enduring attachments of normal life." Morrisey, 408 U.S. at 482. Specifically, Petitioner started and ran her own business, attended church, paid her taxes, and lived openly in her community. Pet. ¶ 22. The length of Petitioner's release and compliance with the OSUP for over sixteen years further strengthen her private interest in his continued freedom from immigration detention. See Doe, 787 F. Supp. 3d at 1093 (finding the Government's actions in conditionally allowing the petitioner to live outside immigration custody for five years created a protected liberty interest); Pinchi, 792 F. Supp. 3d at 1034 (finding the more than two years a petitioner lived outside of immigration custody "heightened" her liberty interest). Hence, Petitioner establishes a significant liberty interest in remaining out of immigration custody.

Second, the risk of erroneous deprivation is significant without a pre-detention hearing. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). In releasing Petitioner on an OSUP in 2009, ICE necessarily determined Petitioner did not pose a significant flight risk or danger to the community. 8 C.F.R. § 241.4(d)(1) (authorizing release on an OSUP where the noncitizen "demonstrates to the satisfaction of the Attorney General or her designee that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such [noncitizen's] removal from the United States"); see also Sun v. Santacruz, No. EDCV 25-02198-JLS-JCx, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (noting a noncitizen's previous release on supervision reflects an implicit finding by ICE that the noncitizen "was neither a flight risk nor a danger to the community").

Respondents offer no evidence or argument showing anything has changed since Petitioner's release in 2009 demonstrating Petitioner no longer meets these criteria. Indeed, the record suggests otherwise, as Petitioner has reported to ICE at periodic check-ins, maintained records of her check-ins, and complied with the terms of her OSUP as directed. App. at 11. Further, Petitioner has no criminal history and was apprehended when she voluntarily appeared at the Los Angeles Field Office for a scheduled check-in. Id. at 6, 11. Finally, as noted, Petitioner has integrated herself into her community, where she has successfully started her own business, attended church, and paid her taxes. Id. at 6. The uncontroverted evidence thus "raises an inference that the government will have difficulty proving by clear and convincing evidence that Petitioner's detention is necessary to prevent danger to the community or [her] flight." Meneses v. Santacruz, No. CV 25-11206-MCS-

PVCx, 2025 WL 3481771, at *4 (C.D. Cal. Dec. 2, 2025).  Therefore, without the procedural safeguard of a pre-detention hearing, ICE may, as it appears to have done so here, revoke Petitioner's release and re-detain her "at any time," regardless of whether her detention serves any valid governmental purpose.  See Pinchi, 792 F. Supp. 3d at 1035 (finding the risk of erroneous deprivation was significant where neither party "had an opportunity to determine whether there is any valid basis for [the petitioner's] detention"); Sun, 2025 WL 2730235, at *6 (finding "post-detention safeguards are definitionally inappropriate to address the harm complained of here").

      Third, Respondents have no countervailing interest in re-detaining Petitioner, and the burden of a pre-detention hearing is low.  "[A]s many other courts . . . have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing."  Meneses, 2025 WL 3481771, at *4 (collecting cases).  As discussed above, Respondents do not show Petitioner poses a flight risk or danger to the community, especially considering Petitioner's lack of criminal history, compliance with her OSUP, and other countervailing evidence in the record before the Court.  Respondents provide no other reason for the revocation of Petitioner's release and Petitioner's ongoing re-detention.  Thus, Respondents lacks any governmental interest in continuing to detain Petitioner.  See Pinchi, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk).  Further, Respondents do not show a pre-detention hearing imposes a significant financial or administrative burden.  To the contrary, custody hearings in immigration court are "routine" and impose only a "minimal" cost.  Singh v. Bowen, No. EDCV 25-03034-CAS-PDx, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citation modified) (quoting Singh v. Andrews, No. 1:25-CV-00801-KES-SKG (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025)).  Hence, ICE's interest in Petitioner's continued detention is minimal.

      Accordingly, because Petitioner is likely to succeed on the merits of her claim that her re-detention violates the Due Process Clause, the first and most important Winter factor weighs in favor of her, particularly in light of Respondents' failure to present an opposition argument.  See dkt. 11.

## B.     LIKELIHOOD OF IRREPARABLE HARM

      "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  Hernandez, 872 F.3d at 994 (citation modified) (quoting Melendres, 695 F.3d at 1002).  "Deprivation of physical liberty by detention constitutes irreparable harm."  Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) (citing Hernandez, 872 F.3d at 994).  Among other harms, immigration detention results in "subpar medical and psychiatric care" for detainees and imposes "economic burdens" and "collateral harms" on the families of detainees.  Hernandez, 872 F.3d at 995.  "In the absence of an injunction, harms such as these will continue to occur needlessly on a daily basis."  Id.

      Here, as stated above, Petitioner's release has been improperly revoked, and Petitioner has been unlawfully detained in violation of her constitutional right to due process for over one month.  While re-detained, Petitioner has been separated from her family and community and unable to work or manage her business affairs.  App. at 12.  Hence, Petitioner is – and will continue to be – irreparably harmed absent relief from this Court.

Accordingly, the second <u>Winter</u> factor weighs in favor of Petitioner.

**C.     BALANCE OF EQUITIES AND PUBLIC INTEREST**

The final two <u>Winter</u> factors "merge when the Government is the opposing party." <u>Nken v. Holder</u>, 556 U.S. 418, 435 (2009).  The Ninth Circuit has recognized "neither equity nor the public's interest are furthered by allowing violations of federal law to continue."  <u>Galvez v. Jaddou</u>, 52 F.4th 821, 832 (9th Cir. 2022) (affirming the balance of hardships weighed in favor of plaintiffs alleging the government violated the INA).

Here, because Petitioner has demonstrated a likelihood of success on her constitutional claim, the balance of equities and public interest "tip[] sharply" in her favor.  <u>All. for the Wild Rockies</u>, 632 F.3d at 1135.  Moreover, Respondents' interest in enforcing immigration laws is not compelling because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends."  <u>Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.</u>, 594 U.S. 758, 766 (2021) (citing <u>Youngstown Sheet & Tube Co. v. Sawyer</u>, 343 U.S. 579, 582, 585-86 (1952)); <u>see also</u> <u>Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.</u>, 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025), <u>appeal dismissed</u>, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) ("[C]ourts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful agency action.'" (quoting <u>League of Women Voters of U.S. v. Newby</u>, 838 F.3d 1, 12 (D.C. Cir. 2016))).  Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor."  <u>Hernandez</u>, 872 F.3d at 996.

Accordingly, the third and fourth <u>Winter</u> factors weigh in favor of Petitioner.

\* \* \* \* \*

Thus, because all four <u>Winter</u> factors weigh in favor of Petitioner, Petitioner is entitled to injunctive relief in the form of immediate release from immigration custody.  As discussed above, Petitioner continues to suffer irreparable harm so long as she remains unlawfully re-detained.  <u>See Esmail v. Noem</u>, No. CV 25-08325-WLH-RAOx, 2025 WL 3030590, at *6 (C.D. Cal. Sep. 12, 2025) ("Providing Petitioner an interview <u>ex post</u> facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process.").  Further, Petitioner's release is necessary to return her to the status quo, which is "the last uncontested status which preceded the pending controversy."  <u>Flathead-Lolo-Bitterroot Citizen Task Force v. Montana</u>, 98 F.4th 1180, 1191 (9th Cir. 2024) (citation modified) (quoting <u>GoTo.com, Inc. v. Walt Disney Co.</u>, 202 F.3d 1199, 1210 (9th Cir. 2000)).  Here, the last uncontested status is Petitioner's release on supervision before her current re-detention.  <u>See Domingo-Ros v. Archambeault</u>, No. 25-CV-1208-DMS-DEB, 2025 WL 1425558, at *2 (S.D. Cal. May 18, 2025) ("Petitioners seek a prohibitory injunction because they seek to preserve the status quo preceding this litigation—their physical presence in the United States free from detention.").

Finally, Respondents concede they "do not have an opposition argument that they are able to present."  Dkt. 11 at 2.  Accordingly, Petitioner's release from custody is the appropriate remedy.

///

# V.
# CONCLUSION

For the reasons set forth above, the Court orders as follows:

1. Petitioner's Application is **GRANTED**;[4]
2. Respondents are **ORDERED** to immediately release Petitioner from their custody;
3. Respondents are **ENJOINED** from re-detaining Petitioner without providing her a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that her physical custody is required;
4. Respondents are **ORDERED** to file a status report no later than February 2, 2026, regarding their compliance with this Order; and
5. Respondents are **ORDERED TO SHOW CAUSE** in writing **no later than seven (7) days from the date of this Order** why the Court should not issue a preliminary injunction.  Petitioner may file a Reply **no later than ten (10) days from the date of this Order**.

Failure to comply with this Order will result in sanctions.

**IT IS SO ORDERED**.

---

[4] Federal Rule of Civil Procedure 65(c) permits a court to grant injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis removed) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)).  Here, it is unlikely Respondents will incur any significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 738 (C.D. Cal. 1996).  Accordingly, the Court waives the bond requirement.